IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES L. PATTERSON, | ) | Case No. 4:17-cv-0431 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CHARMAINE BRACY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Petitioner, James L. Patterson, seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his convictions and sentences in *State v. Patterson*, Case No. 12-CR-519, (Trumbull County, Ohio Court of Common Pleas), violated his constitutional rights.  ECF Doc. No. 1.  Respondent, Charmaine Bracy,[1] has filed a return of writ.  ECF Doc. 6.  Patterson has filed a traverse.  ECF Doc. 28.

The matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Patterson's petition or other case-dispositive motions.  Because all of Patterson's seven grounds for relief are have been procedurally defaulted, raise only non-cognizable claims or otherwise lack merit, I recommend that the Court DENY and DISMISS the petition.

---

[1]  Charmaine Bracy was the warden of Trumbull Correctional Institution, where Patterson is incarcerated, at the time briefing on this matter was conducted.  ECF Doc. 1 at Page ID# 1.  The current Trumbull Correctional Institution warden is Brandeshawn Harris.  https://www.drc.ohio.gov/tci (last visited January 2, 2019).

## II.    Procedural History

### A.    State Trial Court Conviction

A Trumbull County, Ohio grand jury issued an indictment against Patterson on

September 5, 2012.  ECF Doc. 6-1, Ex. 1, Page ID# 76.  The indictment contained the following

charges:

| Count | Charge | Ohio Rev. Code | Offense Date |
|---|---|---|---|
| 1 | Involuntary Manslaughter – F1 | 2903.04(A)&(C) | 4-6-2012 |
| 2 | Corrupting Another with Drugs – F2 | 2925.02(A)(3)&(C)(1) | 4-6-2012 |
| 3 | Corrupting Another with Drugs – F2 | 2925.02(A)(4(a)&(C)(1) | 4-6-2012 |
| 4 | Trafficking in Heroin – F4 | 2925.03(A)(1)&(C)(6)(b) | 4-6-2012 |
| 5 | Trafficking in Heroin – F3 | 2925.03(A)(1)&(C)(6)(c) | 5-24-2012 |
| 6 | Trafficking in Heroin – F1 | 2925.03(A)(2)&(C)(6)(e) | 5-24-2012 |
| 7 | Possession of Cocaine – F5 | 2925.11(A)&(C)(4)(a) | 5-24-2012 |
| 8 | Tampering with Evidence – F3 | 2921.12(A)(1)&(B) | 5-24-2012 |

Counts Five, Six and Seven had attached forfeiture specifications demanding that Patterson's

interest in "a vehicle" be forfeited.  Patterson pleaded not guilty to the charges at his October 29,

2012 arraignment.  ECF Doc. 6-1, Ex. 2, Page ID# 83.

A Trumbull County grand jury issued a superseding indictment on January 15, 2013.

ECF Doc. 6-1, Ex. 3, Page ID# 84.  The parties agree there were only two changes from the

original indictment, first the forfeiture specifications attached to counts five, six and seven

specifically identified the vehicle allegedly subject to forfeiture.  Second, Count Six was

amended to add, "and the amount of the drug involved equals or exceeds ten grams but is less

than fifty grams of Heroin, and the offense was committed in the vicinity of a juvenile, to-wit:

date of birth of juvenile . . ./95,."  *Id.* at Page ID# 87-89.  Nothing before this court indicates

Patterson was ever formally arraigned on or entered pleas in response to the superseding indictment.

The case proceeded to jury trial and, on May 16, 2013, a jury found Patterson not guilty on the Count One Involuntary Manslaughter charge, but guilty of the lesser included offense of Reckless Homicide (in violation of Ohio Rev. Code § 2902.041(A)&(B)); guilty on the Count Two and Three charges of corrupting another with drugs; guilty on the Count Four, Five and Six heroin trafficking charges; not guilty on the Count Seven cocaine possession charge, and guilty on the Count Eight evidence tampering charge. ECF Doc. 6-1, Ex. 4, Page ID# 92.

On May 30, 2013 the trial court, following receipt of a report of a presentence investigation and the parties' sentencing memoranda, merged the Count Two and Count Three corrupting another with drugs charges for purposes of sentencing. The court also ordered the Count Five and Six heroin trafficking charges to merge over the state's objection, and the court overruled Patterson's argument that Counts One Three and Four should merge. The state elected to have Patterson sentenced on the merged Counts Three and Six, preserving its objection to the merging of the latter with Count Five. ECF Doc. 6-1, Ex. 6, Page ID# 103-108.

The trial court imposed the following prison terms upon Patterson at a May 30, 2013 sentencing hearing: thirty-six months for reckless homicide on Count One; seven mandatory years for corrupting another with drugs on Count Three; eighteen months for heroin trafficking on Count Four; seven mandatory years for heroin trafficking on Count Six; and thirty-six months for evidence tampering on Count Eight. The Count Four sentence was to be served concurrently with Count One. All other prison terms were to be served consecutively to one another for an aggregate sentence of twenty years. Fourteen years of Patterson's imprisonment was to be

mandatory time. Further, the court ordered Patterson to serve his sentences consecutively to any

other prison sentences he was already required to serve. ECF Doc. 6-1, Ex. 6, Page ID# 107.[2]

**B.     Direct Appeal**

Patterson, represented by new counsel, filed a timely notice of appeal to the Ohio Court

of Appeals on June 17, 2013. He raised five assignments of error:

1.  The trial court failed to formally arraign the Appellant on the Superceding [*sic*]
    Indictment and Appellant raised this issue prior to trial pursuant to a *Motion To
    Dismiss*, however, that motion was denied by the trial court. (T.p. 9). The trial court
    erred in overruling said motion and, therefore, Appellant's convictions must be
    reversed.

2.  The trial court erred in refusing to sever Counts 1 through 4 from Counts 5 through 8
    for trial. (T.p. 7). The two (2) sets of crimes occurred on two (2) separate dates. The
    evidence relating to each charge was not simple and direct and evidence relating to
    one (1) set of charges would not have been admissible, as "Other Acts" evidence, at
    the trial of the second set of charges.

3.  With respect to Counts 1 through 4, the Appellant committed a single act, with a
    single state of mind and, therefore, the offenses were committed by the same conduct.
    As such, the offenses were allied offenses of similar import and should have merged
    for purposes of sentencing.

4.  The trial court erred in refusing to merge the sentences for said offenses. (T.p. 712).
    The trial court erred in overruling the Appellant's Crim. R. 29 motion as to the
    Involuntary Manslaughter charge (Count 1) and the Corrupting Another With Drugs
    charges (Counts 2 and 3) as there was insufficient evidence to allow the charges to be
    presented to the jury. (T.p. 609). Further, the jury's verdicts of Guilty as to Counts 2
    and 3 the lesser included offense of Reckless Homicide was not supported by
    sufficient evidence and was against the manifest weight of the evidence.

5.  The trial court erred and abused its discretion by increasing the Appellant's sentence
    on Count 8 from two (2) years to three (3) years at the conclusion of the sentencing
    hearing. (T.p. 729).

ECF Doc. 6-1, Ex. 8, Page ID# 112.

The State of Ohio cross-appealed, raising a single assignment of error:

---

[2] The trial court filed a *nunc pro tunc* judgment entry of conviction imposing the same sentences on
August 21, 2013. ECF Doc. 6-1, Ex. 5, Page ID# 94-99.

1. The trial court erred in merging Counts 5 and 6 for sentencing purposes when they are not allied offenses of similar import.

ECF Doc. 6-1, Ex. 9, Page ID# 155-194.  In an October 26, 2015 opinion and judgment entry, the Ohio Court of Appeals overruled Patterson's assignments of error, thereby affirming his convictions; sustained the State's assignment of error, reversing the trial court's judgment merging Count Five and Count Six; and remanded the matter for further proceedings.  ECF Doc. 6-1, Ex. 10, Page ID# 195-240.

Patterson filed a *pro se* motion for reconsideration in the Ohio Court of Appeals on November 5, 2015.  ECF Doc. 6-1, Ex. 11, Page ID# 241.  Patterson requested the court to reconsider its decision overruling his fifth assignment of error based on his contention that the trial judge failed to determine and impose an individual sentence on the Count Eight evidence tampering charge, but, instead, arbitrarily increased the sentence on that count in order to impose the same twenty-year aggregate sentence the judge had originally intended after he realized he could only sentence Patterson to serve thirty-six, rather than forty-eight months on Count One.[3] The State filed a response in opposition on November 10, 2015.  ECF Doc. 6-1, Ex. 12, Page ID# 244.  The Ohio Court of Appeals denied the motion to reconsider in an entry dated December 21, 2015.  ECF Doc. 6-1, Ex. 13, Page ID# 248.  Patterson never appealed the ruling denying his motion for reconsideration to the Ohio Supreme Court.

Patterson, *pro se*, filed a timely notice of appeal in the Ohio Supreme Court on November 30, 2015 concerning the original court of appeals judgment affirming his conviction.  ECF Doc.

---

[3] The parties' briefs permit the undersigned to infer that the trial judge initially pronounced a sentence on Count One imposing a prison term of forty-eight months but changed it to a thirty-six-month prison term prior to the conclusion of the May 30, 2013 sentencing hearing. The judgment entry of conviction imposed a thirty-six-month term on that count.  ECF Doc. 6-1, Ex. 5.  Neither petitioner nor respondent included a transcript of the sentencing hearing in the materials filed in this case.

6-1, Ex. 14, Page ID# 252.  Patterson's memorandum in support of jurisdiction raised five

propositions of law:

1.  Did the trial court err in failing to formally arraign the Appellant on the Superseding Indictment and Appellant raised this issue prior to trial pursuant to a *Motion to Dismiss*, however, that motion was denied by the trial court? (T.p. 9) The trial court erred in overruling said motion and, therefore, Appellant's convictions must be reversed.

2.  Did the trial court err in failing to merge Counts 1 through 4 from Counts 5 through 8 for trial? (T.p. 7). The two (2) sets of crimes occurred on two (2) separate dates. The evidence relating to each charge was not simple and direct and evidence relating to one (1) set of charges would not have been admissible, as (Other Acts) evidence, at the trial of the second set of charges.

3.  Did the trial court err in failing to merge Counts 1 through 4 as the acts arose out of the same conduct and were committed with a single state of mind/amicus [*sic*]?

4.  Did the trial court err in overruling the Appellant's Crim. R. 29 motion as to the Involuntary Manslaughter charge (Count 1) and the Corrupting Another With Drugs charges (Counts 2 and 3) as there was insufficient evidence to allow the charges to be presented to the jury. (T.p. 609). Further, the jury's verdicts of Guilty as to Counts 2 and 3 on the lesser included offense of Reckless Homicide was not supported by sufficient evidence.

5.  Did the trial court err by increasing the Appellant's sentence on Counts 8 from two (2) years to three (3) years at the conclusion of the sentencing hearing? (T.p. 729).

ECF Doc. 6-1, Ex. 15, Page ID# 254.  The State filed a response in opposition.  ECF Doc. 6-1,

Ex. 16, Page ID# 314.  The Ohio Supreme Court declined jurisdiction by a journal entry dated

February 10, 2016.  ECF Doc. 6-1, Ex. 17, Page ID# 331.  Patterson did not seek further review

in the United States Supreme Court.

### C.    Application to Reopen Appeal Under Ohio App. R. 26(B)

Prior to the Supreme Court's declination of jurisdiction of the direct appeal, Patterson

filed, *pro se*, an application to reopen his direct appeal under Ohio Appellate Rule 26(B) on

January 8, 2016, alleging ineffective assistance of appellate counsel.  ECF Doc. 6-1, Ex. 18, Page

ID# 332.  He asserted his appellate counsel wrongly failed to raise three assignments of error:

1.  The trial court erred in convicting and sentencing Patterson of a crime for which he was not indicted in violation of his right to Due Process of law under the U.S. Constitution.

2.  The evidence was insufficient to convict Patterson of Trafficking in Heroin (F2) pursuant to R.C. 2925.03(A)(2) and (C)(6)(d) as there is no manner in which the evidence presented at trial can be construed to meet the weight as required by statute.

3.  The trial court erred by denying Patterson's attempt to dismiss counsel in violation of the Due Process Clause of the Sixth and Fourteenth Amendments to the U.S. Constitution.

The state filed an opposition brief.  ECF Doc. 6-1, Ex. 19, Page ID# 355.  Patterson filed a reply brief.  ECF Doc. 6-1, Ex. 20, Page ID# 361.  The Ohio Court of Appeals denied the application for reopening, finding no basis for concluding Patterson's appellate counsel's failure to raise the proposed assignments of error was deficient performance.  The court also found Patterson had failed to demonstrate a reasonable probability of success had the assignments been raised by appellate counsel.  ECF Doc. 6-1, Ex. 21, Page ID# 365-370.

Patterson appealed, *pro se*, the denial of his application to reopen to the Ohio Supreme Court.  ECF Doc. 6-1, Ex. 22, Page ID# 371.  Patterson's memorandum in support of jurisdiction asserted three propositions of law:

1.  Reckless Homicide is not a lesser included offense of Involuntary Manslaughter. Accordingly, Patterson's Constitutional right to Due Process of law was violated as he was convicted of a charge for which he was not indicted.

2.  10.1 grams of Heroin is insufficient to satisfy the statutory element of "equals or exceeds five grams but less than ten grams" as stated in R.C. 2925.03(C)(6)(d). Accordingly, the evidence was insufficient to convict Patterson of Trafficking in Heroin (F2) pursuant to R.C. 2925.03(A)(2) and (C)(6)(d) as there is no manner in which the evidence presented at trial can be construed to meet the weight as required by statute.

3.  The trial court erred by denying Patterson's attempt to dismiss counsel in violation of the Due Process Clause of the Sixth and Fourteenth Amendments to the U.S. Constitution.

ECF Doc. 6-1, Ex. 23, Page ID# 373.  The State opposed jurisdiction.  ECF Doc. 6-1, Ex. 24,

Page ID# 391.  The Ohio Supreme Court declined to accept jurisdiction over the appeal on June

29, 2016.  ECF Doc. 6-1, Ex. 25, Page ID# 403.  Patterson did not seek further review in the

United States Supreme Court.

### D.    Trial Court Resentencing

Following remand from the Ohio Court of Appeals, the trial court resentenced Patterson

on May 5, 2016.  The court imposed the same sentences with respect to Counts One, Three, Six

and Eight that it imposed on May 30, 2013.  *See* p. 3-4, *supra*, and added a thirty-six-month

sentence for heroin trafficking on Count Five, ordering that sentence to be served concurrently

with the thirty-six-month sentence for reckless homicide on Count One.  Thus, Patterson was

required to serve the same aggregate sentence – twenty years – that was originally imposed.

ECF Doc. 6-1, Ex. 26, Page ID# 404.  Patterson did not appeal the resentencing decision.

### E.    Federal Habeas Corpus Petition

Applying the prison mailbox rule[4], Patterson filed his *pro se* petition for writ of habeas

corpus in this court on February 23, 2017.  ECF Doc. 1.  Patterson's petition raises seven

grounds for relief:

> **GROUND ONE:** Petitioner's right to Due Process was violated when he was not
> arraigned on his Superseding Indictment.

> **GROUND TWO:** Petitioner's right to Due Process was violated when the Court refused
> to sever counts # 1 through 4 from 5 through 8 as other acts evidence.

> **GROUND THREE:** Petitioner's right to Due Process was violated when he was
> sentenced for a crime he did not commit. Reckless homicide which there was insufficient
> evidence to convict Petitioner.

> **GROUND FOUR:** Petitioner's right to Due Process was violated when he was sentenced
> for crimes he did not commit, crimes of Corrupting Another with Drug charges on
> Counts 2 and 3, which was insufficient evidence.

---

[4] *Houston v. Lack*, 487 U.S. 266, 270 (1988).

**GROUND FIVE:** Petitioner's right to Due Process for being sentenced for a crime he was not indicted for (Reckless Homicide).

**GROUND SIX:** Petitioner's right to Due Process was violated when there [*sic*] insufficient evidence to sentence Petitioner to a Trafficking in Heroin (F-2) was incorrect.

**GROUND SEVEN:** Petitioner's right to Due Process was violated when the Petitioner was denied to dismiss [*sic*] Trial Counsel.


## III.    The Facts

The court begins by reciting the facts as they were set out in the Ohio Court of

Appeals opinion.  That court said:

{¶ 3}   Counts 1 through 4 of the Indictment alleged that, on April 6, 2012, Patterson sold heroin in Girard, Ohio, and that the heroin was ultimately used by a seventeen-year-old girl named Christine Sheesley who died as a result of her ingestion of the heroin. Counts 5 through 8 of the Indictment alleged that, on May 24, 2012, Patterson made a drug sale to a police informant during a controlled buy in Girard, Ohio, and that Patterson possessed various drugs and attempted to hide or conceal those drugs during his arrest.

{¶ 4}   On October 29, 2012, Patterson was arraigned and entered a plea of Not Guilty.

{¶ 5}   On January 15, 2013, the Trumbull County Grand Jury issued a Superseding Indictment. The Superseding Indictment was identical to the original Indictment except in the following respects: The Specification of Forfeiture in Counts 5, 6, and 7 of the original Indictment identified the subject property as "a vehicle." In the Superseding Indictment, the subject property was identified as "a vehicle, one 1999 Ford Expedition, VIN 1FMPU18L9XLA53467." Additionally, the Superseding Indictment added the following language to Count 6 (Trafficking in Heroin) of the original Indictment: "and the amount of the drug involved equals or exceeds ten grams but is less than fifty grams of Heroin, and the offense was committed in the vicinity of a juvenile, date of birth 04/22/95, * * *."

{¶ 6}   On January 29, 2013, the trial court's docket noted that an arraignment/pre-trial hearing was scheduled for February 14, 2013.

{¶ 7}   On February 14, 2013, the trial court's docket noted: "set final pre trial[,] waiver of speedy trial for an additional 30 days and sets a trial date for [5]/13/13."

{¶ 8}   On May 10, 2013, Patterson filed a Motion to Sever Charges, seeking to have Counts 1 through 4 tried separately from Counts 5 through 8.

{¶ 9}   On May 13, 2013, Patterson filed a Motion to Dismiss, on the grounds that he "was never arraigned on the superseding indictment."

{¶ 10}  A jury trial on the charges against Patterson commenced on May 13 and concluded on May 15, 2013. At the beginning of trial, the trial court denied Patterson's Motions to Sever Charges and to Dismiss. The following witnesses testified on behalf of the State:

{¶ 11}  Judy Sheesley testified that she was the mother of Christine Sheesley, born on April 6, 1995. On April 6, 2012, Judy Sheesley had dinner with her daughter to celebrate her birthday. Christine Sheesley received a gift of sixty dollars in cash.

{¶ 12}  Captain John Norman of the Girard Police Department testified that, on the morning of April 7, 2012, he responded to a dispatch regarding an unresponsive female in an apartment at 502 Park Avenue in Girard, Ohio. At the scene, Norman discovered Sheesley's lifeless body, Tyler Stevens (who called the police), and Alexis (Lexi) Hugel. After Sheesley's body was removed, Norman questioned Stevens and Hugel at the police station. Stevens and Hugel were interviewed several times and initially gave conflicting accounts of events. As a result of the interview, Norman began a search for a person known as Fresh, later identified as James Patterson.

{¶ 13}  Steve Perch, the toxicologist for the Summit County Medical Examiner's Office, analyzed samples of Sheesley's blood and urine. In Sheesley's blood Perch found morphine present in an amount less than the reportable level of 25 nanograms per milliliter. In Sheesley's urine Perch noted the presence of morphine and 6-monoacetylmorphine.

{¶ 14}  Perch explained that morphine (diacetylmorphine) in the blood metabolizes in less than ten minutes into a compound known as 6-monoacetylmorphine. Within fifteen to twenty minutes, the 6-monoacetylmorphine breaks down into morphine. Within a few hours, all trace of heroin may be eliminated from a person's blood. A similar process of metabolization occurs in urine, but at a slower rate. The primary metabolite, 6-monoacetylmorphine, is peculiar to heroin and would not be present if Sheesley had ingested morphine sulfate or other forms of morphine.

{¶ 15}  Perch was unable to offer an opinion as to when Sheesley ingested heroin or how much she ingested but testified to a reasonable degree of scientific certainty that she had ingested heroin.

{¶ 16}  Dr. Humphrey Donald Germaniuk, the coroner and medical examiner for Trumbull County, conducted an autopsy on Sheesley and determined her cause of

death to be "acute heroin intoxication combined with acute pulmonary pneumonia." Dr. Germaniuk noted the presence of moderate edema/congestion in the lungs and mild cerebral edema, both of which are consistent with the ingestion of a lethal amount of heroin. Dr. Germaniuk also explained that the sudden onset of pneumonia occurs from the depression of the respiratory system, an effect of heroin ingestion, which allows secretions to enter the lungs. The source of the secretions was unidentified, but they may have come from Sheesley's own bodily fluids (saliva, mucus, et cetera) or an external source, such as water being poured on her face.

{¶ 17} Alexis Hugel, seventeen-years-old at the time and a friend of Sheesley's, accompanied her on the evening of April 6, 2012. After having dinner with Sheesley's family, they went to Tyler Stevens' apartment in the early evening. Sheesley had decided to do heroin that night. After a phone call from Stevens, Fresh/Patterson arrived at the apartment. Patterson remained by the door while "Christine got out money and handed it to Tyler and Tyler handed it to Fresh." In return, "Fresh gave Tyler something." During the transaction, neither Sheesley nor Hugel spoke with Patterson. After about fifteen minutes, Patterson departed.

{¶ 18}  Hugel left the apartment before Stevens and Sheesley ingested the heroin. When she returned, Sheesley was "passed out" and "slumped down over [a recliner] chair" in the front room. Stevens was "nervous" and "moving around a lot." Sheesley was moved to the bedroom where they tried to awaken her. Sheesley was making "gurgling noises" and a sound like "muffled" crying. Around midnight, Patterson returned to the apartment. "He said that she needed rest, and that if she didn't wake up to put her in a cold shower." Patterson remained about a half of an hour in the apartment before departing again. Hugel fell asleep. While she slept, Stevens dragged Sheesley back into the front room.

{¶ 19} When Hugel was first interviewed by the police, she did not mention that heroin was involved to avoid getting in trouble.

{¶ 20}  Tyler Stevens, eighteen-years-old at the time, lived at the Park Avenue apartment with his father. Stevens had known Patterson for about three years. On April 6, 2012, Stevens arranged to buy fifty dollars' worth of heroin from Patterson for Sheesley. Stevens called Patterson after Sheesley and Hugel arrived at his apartment. Patterson "walked in the door" and "started talking for a minute." Sheesley remained seated near the door. According to Stevens: Patterson "goes to hand me the heroin, I said, 'No, Christine, she has the money. Hand it to her.'" Patterson set the heroin down on a table and Sheesley handed him a fifty-dollar bill.

{¶ 21} After Patterson and Hugel departed, Stevens injected himself with heroin, and then Sheesley. Stevens passed out. When he awoke, he found Sheesley passed out in the recliner. Later, after Hugel came back, Stevens became concerned and tried to awaken Sheesley. He "put water on her," "shook her," and "smacked her a

few times." Stevens called Patterson and asked him "to come back to smoke a blunt." Patterson "looked at her and said she would be all right."

{¶ 22} The following morning, Stevens called the police. At the time, he believed Sheesley was still alive because he heard "the rattles."

{¶ 23} Stevens admitted that he lied to the police about using heroin during his initial interview. Stevens also threw away the phone he had used to call Patterson in Mill Creek Park and had his father dispose of the needle he used to inject Sheesley.

{¶ 24} As a result of Sheesley's death, Stevens [pleaded] guilty to Involuntary Manslaughter, Corrupting Another with Drugs, Trafficking in Heroin, and Permitting Drug Abuse. In exchange for his testimony against Patterson, the State agreed to recommend a five-year prison sentence for all charges.

{¶ 25} Officer John Freeman of the Girard Police Department testified that he was made aware of Patterson by Captain Norman. Freeman arranged for a confidential informant, named Theodore Thomas aka Riggs, to set up a controlled buy of heroin from Patterson.

{¶ 26} The controlled buy occurred on May 24, 2012, at JP's Car Wash located at 605 Trumbull Avenue, in Girard. Freeman observed a blue Ford Expedition enter one of the wash bays and Thomas approach the vehicle. At this point, police officers moved on the car wash to effect an arrest. There were three persons in the vehicle: Patterson in the driver's seat; Aaron Profanchik in the passenger's seat; and Keairra Price in the rear seat. Patterson did not comply with Freeman's command to show his hands. Instead, he "was making a lot of furtive movements" and "appeared that he was either grabbing for something or attempting to conceal something around his person." Freeman recovered two bags of heroin from the vehicle and two-hundred and seventy-four dollars in cash from Patterson.

{¶ 27} Aaron Profanchik was a passenger in Patterson's vehicle at the time of arrest. At the car wash, Profanchik observed a "white dude" handing Patterson money. Next, Profanchik heard Patterson say, "the police is on us," looked up, and saw the police approaching with guns drawn and ordering Patterson to "freeze." Patterson screamed, "here, Moochie" (Price's nickname), and began taking things from his pants and throwing them into the back seat. A police officer then tasered Patterson.

{¶ 28} Keairra Price is Profanchik's girlfriend and was seventeen-years-old at the time of the controlled buy. She observed the white man approach and give Patterson money. When the police appeared, Patterson "threw stuff in the back seat," which Price picked up and put inside her pants. Price surrendered "the stuff" to the police after being removed from the vehicle.

12

{¶ 29}  Theodore Thomas is a "professional confidential informant" for the Girard Police Department. At Officer Freeman's request, he arranged to buy about two-hundred and forty dollars' worth of heroin from Patterson. At the car wash, he gave Patterson the money and received heroin in a "plastic baggie" with "the corner tied up." At the approach of the police, Thomas ran from the wash bay.

{¶ 30}  Detective Greg Manente works for the Girard Police Department and is assigned to the Northern Ohio United States Marshals Task Force. Manente testified that a typical street buy of heroin involves less than a gram, which is worth "roughly" one-hundred and forty to one-hundred and sixty dollars. For an individual to be in possession of ten or more grams of heroin is an indication that the individual is trafficking.

{¶ 31}  Manente observed the controlled buy on May 24, 2012: "The driver looked at me and immediately turned into the back seat with his hands out of my view." Manente tasered the driver of the vehicle and recovered narcotics from the female in the back seat.

{¶ 32}  Shervone Bufford, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, analyzed the narcotics seized during the controlled buy. She identified the substance recovered from Thomas as 0.5 grams of heroin, the substances recovered from the vehicle as 1.1 grams of heroin and 2.7 grams of cocaine, and the substance recovered from Price as 10.1 grams of heroin.

{¶ 33}  Detective Scott Strain, a juvenile detective and school resource officer with the Girard Police Department, conducted interviews with Stevens and Hugel and participated in the controlled buy resulting in Patterson's arrest.

In a habeas corpus proceeding, factual determinations made by state courts are presumed correct unless the petitioner rebuts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).

13

## IV.  Legal Standards

### A.    The AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act, *Pub.L. 104-132, 110 Stat. 1214* (AEDPA) govern the scope of this court's review.[5] *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279,(2002) (*per curiam*).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[5] Petitions for habeas corpus relief under AEDPA are governed by the statute of limitations set forth in 28 U.S.C. § 2254.  Warden Bracy concedes the grounds in Patterson's petition have been timely asserted.  I concur and find it unnecessary to set forth a statute of limitations analysis in this report.

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

**B.     Cognizability**

Federal habeas proceedings are only available to correct state court misapplication or violations of federal law. To the extent that claims asserted in a federal habeas petition allege purely state-law violations, they are not cognizable on federal habeas review and must be dismissed on that basis unless the state court ruling violates a fundamental federal constitutional right. "It is not the province of a federal habeas court to reexamine state-court determinations on

state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

However, state-court rulings on issues of state law may rise to the level of due process violations if they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  But they must be "so egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised when "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).  Courts, therefore, "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Id.*

16

### C.    Exhaustion and Procedural Default

AEDPA provides a way for state prisoners who are being held in custody in violation of the Constitution or laws or treaties of the United States to apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with *federal* constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)).  But when a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas . . .." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

The term "procedural default" has come to describe the situation in which a person convicted of a crime in a state court fails (for whatever reason) to present a particular *federal* claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.

17

Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[6]

If the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the federal claims on their merits, neither may a federal court do so. In the words used by the United States Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state

---

[6] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's:
"(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

ground, then the petitioner must demonstrate that there was cause for him not to follow the

procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This

"cause and prejudice" analysis applies to failures to raise or preserve issues for review at the

appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Turning to the fourth part of the

*Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor

external to the defense impeded counsel's efforts to comply with the State's procedural rule."

*Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

Constitutionally ineffective assistance from counsel may constitute cause to excuse a procedural

default. *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).

In order to constitute cause, an ineffective assistance of counsel claim generally must "'be

presented to the state courts as an independent claim before it may be used to establish cause for

a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479,

106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). That is because, before counsel's ineffectiveness will

constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment,

and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*,

411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to

"satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself."

*Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). The

Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default
> doctrine in Coleman: "In the absence of the independent and adequate state
> ground doctrine in federal habeas, habeas petitioners would be able to avoid the
> exhaustion requirement by defaulting their federal claims in state court. The
> independent and adequate state ground doctrine ensures that the States' interest in
> correcting their own mistakes is respected in all federal habeas cases." 501 U.S.,
> at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay
> between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*,

19

526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter
doctrine was necessary to "'protect the integrity' of the federal exhaustion rule."
*Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting *id.*, at 853, 526
U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The
purposes of the exhaustion requirement, we said, would be utterly defeated if the
prisoner were able to obtain federal habeas review simply by "'letting the time
run'" so that state remedies were no longer available.  *Id.*, at 848, 526 U.S. 838,
119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were
we to allow federal review to a prisoner who had presented his claim to the state
court, but in such a manner that the state court could not, consistent with its own
procedural rules, have entertained it.  In such circumstances, though the prisoner
would have "concededly exhausted his state remedies," it could hardly be said
that, as comity and federalism require, the State had been given a "fair
'opportunity to pass upon [his claims].'"  *Id.*, at 854, 526 U.S. 838, 119 S.Ct.
1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr
v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452-53.

If, after considering all four factors of the *Maupin* test, the court concludes that a

procedural default occurred, it may not consider the procedurally defaulted claim on the merits

unless "review is needed to prevent a fundamental miscarriage of justice, such as when the

petitioner submits new evidence showing that a constitutional violation has probably resulted in

a conviction of one who is actually innocent."  *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir.

2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 91 L. Ed. 2d 397

(1986)).

## V.      Discussion

Each of Patterson's grounds for habeas relief will be examined in the order presented.

The discussion of certain issues will be combined for ease of review.

### A.      Ground One

Patterson's Ground One claim alleges his federal due process rights were violated when

he was not arraigned on the superseding indictment issued by the Trumbull County grand jury on

January 15, 2013.  ECF Doc. 1, Page ID# 5.  Although Patterson's first assignment of error in his

20

direct appeal and his first proposition of law in his attempt to obtain Ohio Supreme Court review of that appeal both dealt with the lack of formal arraignment on the superseding indictment, he never couched his state-court arguments on that issue as a violation of his federal rights.  As a result, Patterson did not fairly present the Ground One claim in state court and, because he may no longer do so,[7] he has procedurally defaulted the claim unless, pursuant to *Maupin*, he can demonstrate cause for his failure to raise the claim and prejudice resulting from it not being considered.[8]

Patterson has not argued that there was any cause for his failure to raise his Ground One claim in state court, nor has he contended he was prejudiced by the failure of that claim to be considered.  Indeed, his Traverse states, in regard to this issue: "Patterson does not necessarily agree with the Respondent's application of the procedural default doctrine applied to Grounds One and Two, but offers no further argument."  ECF Doc. 9, Page ID# 1168.  Because Patterson has not shown cause for his failure to raise the Ground One claim in state court and because he may not raise that claim in a state court proceeding now, the court must deny that claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in the

---

[7] Patterson arguably could have raised this issue in his motion for reconsideration of the decision in his direct appeal or in his application to reopen his direct appeal filed under Ohio Appellate Rule 26(B).  But he did not do so, and principles of *res judicata*, in addition to the language of Appellate Rule 26(B) itself, would preclude the Ohio Court of Appeals from considering a second application to assert something that could have been raised on the initial application for reopening.

[8] Respondent also contends Ground One should be dismissed because it raises only a non-cognizable issue of state law.  Respondent points out that the Ohio Court of Appeals resolved Patterson's arraignment issue by referring exclusively to state law and rules.  Respondent argues correctly that a federal habeas court lacks the authority to revise or reject a state court's interpretation of state law. *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003).  Patterson's traverse asserts that he "does not agree" with respondent's cognizability contention but offers no further argument.  Because the undersigned concludes Ground One was procedurally defaulted and otherwise would fail on the merits, it is unnecessary to provide a further discussion of the argument that Ground one raises only a non-cognizable claim.

conviction of one who is actually innocent." *Hodges*, 717 F.3d at 530. Here, Patterson has neither offered any new evidence nor contended that he is actually innocent of the charges on which he was convicted. Instead, he makes other claims which will be addressed further below.

Ground One should be dismissed on the ground that it was not fairly presented or exhausted and is now procedurally defaulted.

Even if Ground One were not subject to dismissal on procedural grounds, it could not succeed on the merits. In essence, Patterson's claim that he was not arraigned on the superseding indictment focuses upon his not having received notice of his right to counsel. As pointed out by respondent, however, this claim does not necessarily implicate any federal constitutional rights. Although decided long ago, the United States Supreme Court's decision in *Garland v. Washington*, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914) is still good law. In *Garland*, the Supreme Court held, in regard to complaints about a lack of arraignment on a superseding charge, "Due process of law . . . does not require the State to adopt any particular form of procedure, so long as it appears the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution." *Id.* At 645. The "want of formal arraignment" does not, standing alone, "deprive[] the accused of any substantial right, or in any ways change[] the course of the trial to his disadvantage." *Id.* "Thus, under *Garland*, 'a failure to arraign warrants a reversal [or habeas relief] only if it causes prejudice or impairs a substantial right.'" *Chappell v. Morgan*, No. 4:15cv882, 2016 U.S. Dist. LEXIS 184147(N.D. Ohio November 30, 2016, Knepp, M.J.) (citing *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998), report & recommendation adopted by 2017 U.S. Dist. LEXIS 22258 (Feb. 16, 2017).

The Ohio Court of Appeals, citing Ohio law, ruled that no error arose from any lack of arraignment on Patterson's superseding indictment:

{¶ 49} In Patterson's first assignment of error, he contends that the charges against him in the Superseding Indictment should have been dismissed as he was never formally arraigned on those charges.

{¶ 50} The arraignment of a defendant "shall be conducted in open court, and shall consist of reading the indictment, information or complaint to the defendant, or stating to the defendant the substance of the charge, and calling on the defendant to plead thereto." Crim.R. 10(A). "When a defendant not represented by counsel is brought before a court and called upon to plead, the judge or magistrate shall cause the defendant to be informed and shall determine that the defendant understands," inter alia, that he "has a right to retain counsel even if the defendant intends to plead guilty, and has a right to a reasonable continuance in the proceedings to secure counsel," and that he "has a right to counsel, and the right to a reasonable continuance in the proceeding to secure counsel, and, * * * the right to have counsel assigned without cost if the defendant is unable to employ counsel." Crim.R. 10(C)(1) and (2).

{¶ 51} "In Ohio, the general rule is that arraignment under the criminal rules is not necessary when the defendant knows what he or she is accused of and is able to adequately defend himself or herself." *Lewis v. Akron Mun. Court*, N.D.Ohio No. 05: 09 CV 1418, 2011 U.S. Dist. LEXIS 55447, *11 (May 4, 2011), citing *Hamilton v. Brown*, 1 Ohio App.3d 165, 167, 1 Ohio B. 477, 440 N.E.2d 554 (12th Dist.1981). "Vacating convictions for lack of formal arraignment proceedings is predicated on the existence of possible prejudice. * * * The interests presumptively at issue are the right to know of the charges and the right to adequately prepare a defense, rights which might be prejudiced by the lack of formal charge and entry of plea until the beginning of trial proceedings." (Citation omitted.) *Brown* at 167; *State v. Gates*, 11th Dist. Portage No. 2011-P-0001, 2011-Ohio-5711, ¶ 8 (the purpose of the arraignment is "to advise the accused of his constitutional rights and to inform him of the nature of the charge against him") (citation omitted).

{¶ 52} Paterson claims he "was prejudiced due to the failure to inform him of his rights to counsel * * *[;] had the Appellant been advised of his rights to counsel at his arraignment (which would have been several months prior to trial), he would have understood, then, that he had a right to seek other counsel or, if he could not afford other counsel, that he could seek appointed counsel." Appellant's brief at 9-10.

{¶ 53} Assuming, arguendo, that Patterson was not formally arraigned on the Superseding Indictment,[1] we find no prejudice. The record before this court

_____

[1] The trial court scheduled Patterson for arraignment/pre-trial on the Superseding Indictment on February 14, 2013. A pre-trial was held on that date, at which Patterson waived his right to a speedy trial, but the court's docket does not indicate whether there was a reading of the Indictment in open court. On November 20, 2013, during the course

23

demonstrates that Patterson was both aware of and exercising his right to counsel irrespective of arraignment under the Superseding Indictment. On October 29, 2012, Patterson was formally arraigned under the original Indictment, which was substantially similar to the Superseding Indictment. As a result of the prior arraignment, Patterson would have been aware of the nature of the charges against him and his constitutional rights. Subsequent to the original arraignment, Patterson retained counsel who represented him at the February 14, 2013 arraignment/pre-trial. On this date, Patterson executed a Waiver of Speedy Trial rights, which document was signed by both Patterson and his counsel. As Patterson had legal representation at this time, the trial court was not required under the Criminal Rules to advise him of his Sixth Amendment rights. Crim.R. 10(C). Patterson's subsequent dissatisfaction with trial counsel was in no way connected with the failure to formally arraign him under the Superseding Indictment. In the absence of any colorable claim of prejudice arising from the arraignment procedure in this case, Patterson's argument must be rejected.

{¶ 54} The first assignment of error is without merit.

Patterson has not even argued that the Ohio Court of Appeals decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or that it was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Moreover, this court must defer to the factual conclusions embodied within the Ohio Court of Appeals' holdings unless Patterson adduces evidence that clearly and convincingly demonstrates such factual findings were erroneous.  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Patterson has not challenged any of the factual findings made by the Ohio courts.

I recommend Ground One be dismissed on the ground it was procedurally defaulted and in any event lacks merit.

---

of the appeal, counsel for Patterson advised this court that a transcript of the February 14, 2013 arraignment/pre-trial had been requested, but not prepared. [Footnote from Ohio Court of Appeals opinion]

### B.      Ground Two

Patterson's second ground for relief alleges his due process rights were violated when the trial court "refused to sever counts # 1 through 4 from 5 through 8 as other acts evidence."  ECF Doc. 1, Page ID# 7.  Although Patterson raised the issue of the trial court's denial of his motion to sever in his direct appeal, he never presented the claim as having caused a violation of his federal constitutional rights.  Patterson's second assignment of error in the Ohio Court of Appeals and his second proposition of law in his jurisdictional memorandum to the Ohio Supreme Court simply asserted that the trial court erred.  Patterson cited only Ohio court rules and case law in support of his argument and never referred to the United States Constitution or any federal law.  ECF Doc. 6-2, Ex. 8, Page ID# 137-142; Ex. 15, Page ID# 261-264.  Because Patterson did not give the Ohio courts a chance to correct any alleged violation of federal law arising from the refusal to order separate trials of his two sets of indicted charges, he failed to exhaust that claim in state court.  Because he cannot now raise such issues without running afoul of state *res judicata* principles, he has procedurally defaulted the claim.  Ground Two should be dismissed on this basis.

Patterson's Ground Two claim involving a challenge to the Ohio courts' rulings on his severance argument is governed by state law. *Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002).  State law trial errors will not warrant habeas relief unless the "error rises to the level of depriving the defendant of fundamental fairness in the trial process."  *Id.* (quoting *Serra v. Michigan Dept. of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993)).  A criminal defendant is not entitled to severance merely because he might have had a better chance for acquittal in a separate trial.  *See Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L. Ed. 2d 317 (1993).  On federal habeas review, a petitioner must show that misjoinder "resulted in prejudice so great

as to deny a defendant his . . . right to a fair trial." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (quoting *U. S. v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L. Ed. 2d 814 (1986)); *Coley v. Bagley*, 706 F.3d 741, 753 (6th Cir. 2013).

The Ohio Court of Appeals considered Patterson's claim that he was prejudiced by the trial court's refusal to sever the counts and rejected his claim, explaining:

{¶ 55} Under the second assignment of error, Patterson argues that the trial court erred by denying his Motion to Sever Charges.[9]

{¶ 56} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A).

{¶ 57} In the present case, the two sets of charges, Counts 1 through 4 and Counts 5 through 8, are of a similar character (both being drug transactions) and are connected inasmuch as the controlled buy arose out of the investigation of Sheesley's death.

{¶ 58} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." Crim.R. 14.

{¶ 59} "To prevail on his claim that the trial court erred in denying his motion to sever, the defendant has the burden of demonstrating three facts. He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." *State v. Schaim*, 65 Ohio St.3d 51, 59, 1992-Ohio-31, 600 N.E.2d 661 (1992); *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), *syllabus*.

---

[9] [Footnote 2 from Ohio Court of Appeals decision] Patterson's Motion to Sever Charges was untimely filed on May 10, 2013, three days before trial commenced. Crim.R. 12(D) ("[a]ll pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier"); Crim.R. 12(C)(5) ("[t]he following must be raised before trial * * * [r]equests for severance of charges or defendants under Crim. R. 14"). The failure to file a timely motion for severance is sufficient reason for its denial. State v. Bell, 3rd Dist. Seneca No. 13-12-39, 2013-Ohio-1299, ¶ 29.

{¶ 60} "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *Id.* "Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

{¶ 61} Patterson claims that the joinder in the present case was prejudicial in that the events of the May 24, 2012 controlled buy constituted "other acts" evidence which tended "to show that Appellant was a drug trafficker and should be convicted in the sale of drugs to Mr. Stevens and the death of Ms. Sheesley on that basis alone." Patterson further claims the testimony regarding the controlled buy bolstered Stevens' and Hugel's credibility which "was significantly called into question given their conflicting testimony and their inconsistent and untruthful prior statements." Appellant's brief at 14-15.

{¶ 62} We find no prejudice resulting from the joinder of charges in the present case and that the evidence of each crime was simple and direct. Patterson's involvement in the controlled buy was firmly established by the testimony of police officers and the passengers in Patterson's vehicle. His involvement in Sheesley's death was established by the testimony of Stevens and Hugel. With respect to Stevens' testimony, there was no possibility of misidentification. Stevens testified that he had known Patterson for several years and deliberately contacted him to obtain heroin on Sheesley's behalf. If Stevens' identification were to be discredited, the jury would have to conclude that he intentionally lied about the source of the heroin. The corroboration of Stevens' testimony by Hugel's identification was much more significant than Patterson's subsequent involvement in the controlled buy. Hugel, unlike Stevens, was not charged in connection with Sheesley's death and so received no consideration for her testimony. Hugel did not use heroin and did not like Stevens. She observed Patterson on two occasions during the night of April 6, during the course of which she spoke with him and he introduced himself as "Fresh." Patterson's involvement in the controlled buy had little corroborative value as to whether Stevens was intentionally lying to implicate Patterson in Sheesley's death. *Torres*, 66 Ohio St.2d at 344, 421 N.E.2d 1288 (joinder was not improper where the evidence "was amply sufficient to sustain each verdict, whether or not the indictments were tried together").

{¶ 63} Moreover, the testimony regarding the events of April 6, 2012, and May 24, 2012, was simple and direct. The two incidents involved different witnesses, occurred at different locations, and were separated in time by over a month and a half. Courts have regularly held that joinder in such circumstances is not improper, even when the different sets of charges are drug related. *State v.*

*Harris*, 8th Dist. Cuyahoga Nos. 98183 and 98184, 2013-Ohio-484, ¶ 11 ("the jury could reasonably separate the evidence as to each charge" where "the offenses in each case pertained to drug-related activity in the appellant's home, at which the police executed search warrants on two separate occasions"); *State v. Cassell*, 10th Dist. Franklin Nos. 08AP-1093 and 08AP-1094, 2010-Ohio-1881, ¶ 59 ("[a]lthough both incidents involved Jones and appellant, the incidents took place six months apart, at separate locations"); *State v. Wilkins*, 12th Dist. Clinton No. CA2007-03-007, 2008-Ohio-2739, ¶ 16 (rejecting the argument that "the cumulatory effect of evidence made it more likely that a jury would find * * * [the appellant] was guilty of the more serious crimes, though those crimes are based allegedly on ambiguous evidence," where the evidence supporting various trafficking convictions was simple, direct, and legally sufficient).

{¶ 64} The second assignment of error is without merit.

Doc. 6-1, Page ID# 209-212.

Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by joining together unrelated criminal charges in a single trial, the Ohio Court of Appeals' rejection of Patterson's improper joinder claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126, 128 S.Ct. 743, 169 L. Ed. 2d 583 (2008); *Carey v. Musladin*, 549 U.S. 70, 77, 127 S.Ct. 649, 166 L. Ed. 2d 482 (2006); *See also Comaduran v. Clark*, 452 F. App'x 728, 728-29 (9th Cir. 2011). Moreover, Patterson has not demonstrated that the Ohio Court of Appeals' conclusion – that he suffered no prejudice from the denial of his severance motion – was contrary to, or involved an unreasonable application of, clearly established federal law concerning the denial of fundamental fairness as determined by the Supreme Court of the United States, 28 U.S.C. §2254(d)(1). Indeed, Patterson fails to make any argument at all in support of his claim. Thus, Patterson's Ground Two claim would fail on the merits even if it had not been procedurally defaulted.

I recommend Ground Two be dismissed on the ground it has been procedurally defaulted, raises only a noncognizable claim and otherwise fails on the merits

28

C.      Ground Three

Patterson's third ground for relief asserts that his "right to due process was violated when he was sentenced for a crime he did not commit.  Reckless homicide which there was insufficient evidence to convict petitioner." The "supporting facts" statement in Patterson's petition indicates: "There was no evidence to show that Petitioner Patterson committed the crimes.  Tyler Stevens admitted to this crime in Petitioner Patterson's Trial Transcripts."

Respondent treated Patterson's Ground Three claim as a sufficiency of the evidence, due process challenge, identifying the correct standards by which this court must evaluate such a claim in the habeas context under *Jackson v. Virginia*, 443 U.S. 307 (1979) and *Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060 (2012).  Respondent pointed out that the Ohio Court of Appeals addressed and rejected this same argument in Patterson's direct appeal.

But Patterson's Traverse took a different tack.  There, he picks up on the analysis offered by the dissenting judge in the Ohio Court of Appeals direct appeal decision – contending that it was legal error for the trial court to give a reckless homicide instruction as a lesser included offense of the Count One involuntary manslaughter charge.  Patterson neither raised that issue in his direct appeal nor in his attempt to obtain Ohio Supreme Court review on direct appeal.  Instead, he included it as the first assignment of error posed in his Rule 26(B) application to reopen the direct appeal, contending he'd received ineffective assistance of appellate counsel when the issue was not raised on direct appeal.  Patterson's Traverse asserts that Ground Three and Ground Five "effectively raise the same claim – that the trial court erred in providing the jury with a lesser included offense instruction for Reckless Homicide where Patterson was charged with Involuntary Manslaughter; and that there was insufficient evidence to find him guilty of either."  ECF Doc. 6-1, Page ID# 1175.

### 1.     Sufficiency of Evidence – Reckless Homicide

I will first examine Patterson's sufficiency of evidence challenge concerning the offenses of involuntary manslaughter and reckless homicide.  The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979).  A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Petitioner's sufficiency claim, federal habeas review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a

nearly insurmountable hurdle.'" *Davis,* 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The starting point of the court's analysis is the state court of appeals decision. Under AEDPA, it is the decision which must be analyzed to determine whether it was contrary to, or an unreasonable application of, clearly established federal law. For the following reasons, the court cannot make that conclusion.

The Ohio Court of Appeals determined, as a matter of law, that after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the involuntary manslaughter, reckless homicide, and corrupting another with drugs charges to have been proven beyond a reasonable doubt. It did so after citing the proper legal standard[10] and drawing justified conclusions concerning the evidence produced at Patterson's trial:

> {¶ 80} In the fourth assignment of error, Patterson argues there was insufficient evidence to submit the Involuntary Manslaughter and two Corrupting Another with Drugs charges to the jury, and that his Reckless Homicide and Corrupting Another with Drugs convictions were against the manifest weight of the evidence.
>
> {¶ 81} The manifest weight of the evidence and the sufficiency of the evidence are distinct legal concepts. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44. With respect to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
>
> {¶ 82} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing

---

[10] The court of appeals also addressed Patterson's claim that the verdicts were against the manifest weight of the evidence, a claim not asserted (nor could it be asserted) in his federal habeas petition.

*State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 1997 Ohio 52, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

{¶ 83} In order to convict Patterson of Involuntary Manslaughter, the State was required to prove, beyond a reasonable doubt, that he "cause[d] the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). For the lesser included offense of Reckless Homicide, the State was required to prove that he "recklessly cause[d] the death of another." R.C. 2903.041(A). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 84} In order to convict Patterson of Corrupting Another with Drugs, the State was required to prove, beyond a reasonable doubt, that he "knowingly * * * [b]y any means, administer[ed] or furnish[ed] to another * * * a controlled substance, and thereby cause[d] serious physical harm to the other person" (Count 2), and "[b]y any means * * * [f]urnish[ed] or administer[ed] a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard" (Count 3). R.C. 2925.02(A)(3) and (4)(a).

{¶ 85} With respect to the Corrupting Another with Drugs charges, Patterson maintains that there was insufficient evidence that he "administer[ed] or furnish[ed]" a controlled substance to Sheesley, since the evidence only demonstrated that the drug transaction occurred between Patterson and Stevens. We disagree.

{¶ 86} "Furnished," as defined for the jury, meant "provided, supplied or gave access to." It does not matter if the heroin was sold or delivered directly to Stevens, provided that the sale gave Sheesley access to it. According to Hugel's testimony, Sheesley gave the money to Stevens who gave it to Patterson. According to Stevens' testimony, he told Patterson that Sheesley was purchasing the heroin. Accepting either witness' version of events (in a light most favorable to the State), there was sufficient evidence that Patterson knew he was giving

Sheesley access to heroin by the sale to or through Stevens. *State v. Schwab*, 4th Dist. Athens No. 12CA39, 2014-Ohio-336, ¶ 3 (testimony that the appellant "kept his medications in a kitchen cabinet, to which anyone in the home had access" was sufficient evidence of furnishing drugs to another); *State v. Hardison*, 9th Dist. Summit No. 23050, 2007-Ohio-366, ¶ 29-30 (testimony that appellant hid drugs in a minor's dresser drawer was sufficient evidence of furnishing drugs to another).

{¶ 87} With respect to Corrupting Another with Drugs (Count 3), Patterson maintains that there was insufficient evidence that he recklessly, i.e., "with heedless indifference to the consequences, * * * perversely disregard[ed] a known risk that such circumstances are likely to exist," furnished a controlled substance to a juvenile two years his junior. Former R.C. 2901.22(C); R.C. 2907.01(I) ("'[j]uvenile' means an unmarried person under the age of eighteen"). We disagree.

{¶ 88}  Stevens testified that he was eighteen years old on the date of Sheesley's death and that he had known Patterson for several years. It is reasonable to infer that Patterson would be aware of Stevens' approximate age and that his friends would be of a similar age. Moreover, the jury was able to view Hugel, who was present and of the same age as Sheesley, and pictures of Sheesley, both alive and deceased. Thus, the jury could determine based on the appearance of the persons present at Stevens' apartment whether Patterson acted recklessly as to Sheesley's age.

{¶ 89} With respect to Involuntary Manslaughter, Patterson maintains that there was insufficient evidence that Sheesley's death was the proximate result of the sale of heroin. "It is impossible to suggest that Appellant could have foreseen as a consequence of his drug sale to Mr. Stevens that Stevens would, subsequently, inject Ms. Sheesley with heroin and that she would, subsequently, die as a result of said injection." Appellant's brief at 14-15. We disagree.

{¶ 90} There are several cases upholding convictions for Involuntary Manslaughter predicated on drug trafficking and/or possession. *State v. Shoemaker*, 3rd Dist. Union No. 14-06-12, 2006-Ohio-5159, ¶ 68 ("Justin's death, resulting from a morphine overdose, could have reasonably been anticipated by an ordinarily prudent person as likely to result from Shoemaker's trafficking in morphine"); *State v. Baksi*, 11th Dist. Trumbull No. 98-T-0123, 1999 Ohio App. LEXIS 6271, *44 (Dec. 23, 1999) ("appellant prepared an extremely strong hit of heroin and * * * he subsequently gave the loaded syringe to another inmate who was known to abuse drugs"); *State v. Grunden*, 65 Ohio App.3d 777, 783-784, 585 N.E.2d 487 (3rd Dist.1989) ("reasonable minds could readily have concluded at the close of the state's case that the infant's death was proximately caused by

33

the defendant's conduct in leaving a gram of cocaine unattended on a coffee table").

{¶ 91} Patterson counters that these cases are distinguishable (at least *Shoemaker* and *Baksi*) in that the offenders personally administered and/or furnished the drugs to the decedents. We find the distinction to be immaterial as to whether the deaths proximately resulted from the offenders' drug activity. The possibility of overdose is a reasonably foreseeable consequence of the sale of heroin.

{¶ 92} In the present case, the evidence showed that Patterson sold heroin that he knew was being purchased with Sheesley's money and so he could reasonably assume that she would use the heroin. Several hours later, Patterson was contacted by Stevens who was becoming agitated by Sheesley's failure to regain consciousness. Fully aware that the heroin he sold caused her to be in that state, Patterson failed to seek medical attention or have such attention sought on her behalf. The failure to do so resulted in her death from acute pneumonia. Based on the foregoing evidence, there was sufficient evidence to support Patterson's convictions, and those convictions were not against the manifest weight of the evidence.

{¶ 93} The dissent would reverse the conviction for Reckless Homicide on the grounds that the State failed to introduce evidence that Sheesley would have survived had medical attention been sought. Such a conclusion, however, could be reasonably inferred from the testimony of Dr. Germaniuk, who described the conditions leading to the onset of acute pneumonia. According to Dr. Germaniuk's testimony, the cause of the pneumonia was the entry of secretions into the lungs resulting from Sheesley's depressed respiratory system. It does not require expert testimony to infer that the longer Sheesley remained in a catatonic state, the greater the likelihood that pneumonia would develop.

{¶ 94} The dissent also fails to appreciate that Patterson's conviction for Reckless Homicide does not merely rest on his furnishing the heroin to Sheesley, but his subsequent advice to Stevens and Hugel that Sheesley would be "all right" and needed rest, rather than medical attention. While every incidence of heroin use may "not [be] substantially likely to cause death" (infra at ¶137), the failure to seek medical attention for one already in a heroin-induced coma is evidence of a substantial and unjustifiable risk that such conduct is likely to, and in this case did, result in death.

{¶ 95} The fourth assignment of error is without merit.

34

ECF Doc. 6-1, Page ID# 218-223.  Given the elements of the Ohio criminal offenses of involuntary manslaughter, reckless homicide and corrupting another with drugs, and the evidence supporting those charges recited by the court of appeals (and not truly challenged by Patterson), it is apparent that a trial jury, on the evidence available to it, had a rational basis for convicting Patterson of the crimes of involuntary manslaughter, reckless homicide and corrupting another with drugs.  And any claim the trial jury had no rational basis for conviction or that the court of appeals' conclusion on this issue was contrary to, or an unreasonable application of, clearly established federal law as enunciated in *Jackson v. Virginia* falls far short of the mark.  Patterson's Ground Three claim – to the extent it is a sufficiency of the evidence claim – must be dismissed on the merits.

### 2.    Improper Jury Charge – Reckless Homicide

To the extent Patterson contends his third ground for relief also embodies a challenge to the giving of a lesser included offense instruction to the charge of involuntary manslaughter (a contention that is not evident from the content of his petition but only from his Traverse), he faces a host of problems.

First, Patterson did not assert that claim on direct appeal.  He could have.  The contended error was in the trial court record and could have been discovered and asserted by his appellate counsel.  Patterson's counsel could have argued on direct appeal that it was error to have charged the jury on reckless homicide because it was not a lesser included offense of involuntary manslaughter.  Patterson did not – but could have – included this issue in his motion for reconsideration of the court of appeals decision to affirm his conviction.  Patterson did not – but could have – raised this issue in his application for appeal to the Ohio Supreme Court inasmuch as the dissenting judge on appeal had expressed his view on that topic by the time Patterson filed his notice of appeal in the state supreme court.  Because Patterson did not present this claim on

direct appeal, he never fairly presented it to the Ohio courts.  Instead, he was forced to attempt to

raise it on his application to reopen his direct appeal.

Second, putting aside the question of whether giving an allegedly incorrect lesser

included offense instruction even raises a cognizable issue of federal law,[11] there is little doubt

that Patterson procedurally defaulted any such claim by failing to raise it on direct appeal.  Ohio

follows the rule of *res judicata* in regard to issues that have – or have not – been raised on

appeal.  If an issue could have been raised but was not (as here), then that issue is said to be

barred from further review by *res judicata*.  "'Under the doctrine of *res judicata*, a final

judgment of conviction bars a convicted defendant who was represented by counsel from raising

and litigating in any proceeding other than an appeal from that judgment, any defense or claimed

lack of due process that was raised *or could have been raised by the defendant at trial, * * * or*

*on appeal from that judgment*.'"  *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 1996-Ohio-337, 671

N.E.2d 233 (1996) quoting *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967) (emphasis

---

[11] As discussed (p. 25-26, *supra*), **Error! Main Document Only.**claims alleging only violations of state law are not cognizable upon federal habeas review and must be dismissed on that basis unless a fundamental violation of petitioner's due process rights has occurred.  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  Even if the state court made errors in the application of state law, no cognizable issue arises unless there has been a denial of fundamental fairness.  *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017).  In *Warner v. Zent*, 997 F.2d 116, 133 (6th Cir. 1993), the Sixth Circuit stated: "Within constitutional limits, however, a state has discretion to determine the elements of state offenses.  *See Patterson v. New York*, 432 U.S. 197, 210, 53 L.Ed.2d 281, 97 S. Ct. 2319 (1977).  On habeas review we are bound by state court interpretations of state criminal law except in extreme circumstances where it appears that the interpretation is an obvious subterfuge to evade consideration of a federal issue.  *See Mullaney* [*v. Wilbur*, 421 U.S. 584] at 690-91 [,44 L.Ed.2d 508, 95 S. Ct. 1881 (1975)]."  This court most likely would not have the right in a habeas proceeding to determine whether reckless homicide was a lesser included offense of involuntary manslaughter under Ohio law, because it does not raise an "extreme circumstance" in which this court would have reason to question the fundamental fairness of the state court proceedings, particularly when, as here, a state court jury and the state court of appeals found there was sufficient evidence to convict the defendant of that charge.

added). Ohio's rule of *res judicata* is an Ohio rule that, independent of federal law, bars further

review in Ohio. And because Ohio courts regularly enforce the rule of *res judicata*, it is

adequate to foreclose review in later federal habeas proceedings. "Ohio courts have consistently

held that claims that can be adjudicated on facts in the record can only be presented on direct

appeal. [The Sixth Circuit] has held that this rule is regularly and consistently applied by Ohio

courts as required by the four-part *Maupin* test." *Buell v. Mitchell*, 274 F.3d 337, 349 (6th

Cir.2001) (citations omitted)"

Patterson attempted to raise his reckless-homicide-improper-jury-charge issue in his Rule

26(B) application to reopen his direct appeal, claiming ineffective assistance of appellate counsel

prevented the issue from being raised on direct appeal. As Warden Bracy correctly points out,

however, Rule 26(B) proceedings are not a substitute for asserting an issue on direct appeal.

Answer/Return of Writ, ECF Doc. 6, Page ID# 60. The Sixth Circuit in *Lott v. Coyle*, 261 F.3d

594, 612-13 (6th Cir. 2001), ruled that the only thing preserved by Rule 26(B) proceedings is the

claim of ineffective assistance of appellate counsel, not the underlying claim. Thus, Patterson

procedurally defaulted his third ground for relief to the extent it included his claim that a lesser

included offense charge of reckless homicide should not have been included in the jury

instructions at trial.

Patterson has not argued that anything external to the defense was the cause of his failure

to raise this issue on direct appeal. Thus, he cannot meet the cause requirement of the *Maupin*

test. Mere error by counsel at the trial level will not suffice to provide cause for the default

absent constitutionally ineffective assistance of counsel.[12] *Murray v. Carrier*, 477 U.S. 488, 106

S. Ct. 2639, 91 L.Ed.2d 397 (1986). Ineffective assistance of appellate counsel does not, as

---

[12] Notably, it was Patterson's counsel who requested and received the reckless homicide lesser included offense instruction to which Patterson now objects.

Warden Bracy argues, provide cause for procedural default of a meritless claim.  The Ohio Court of Appeals ruled that Patterson's first proposed additional ground for appeal (arguably embodied in his Ground Three habeas claim) lacked merit.  This was because it found there is Ohio precedent indicating that reckless homicide is a lesser included offense of involuntary manslaughter, notwithstanding the views of the dissenting judge.  That being the case, the court ruled that the performance of Patterson's appellate counsel was not deficient for failing to raise the issue.  Further, the court concluded that Patterson could not demonstrate that, had the issue been raised by his appellate counsel, he had a reasonable probability for success.  ECF Doc. 6-1, Page ID# 365, 366-367, 370.  Thus, the court of appeals concluded that Patterson had not shown that he suffered actual prejudice resulting from the alleged ineffective assistance of appellate counsel.[13]

AEDPA requires this court to defer to the Ohio Court of Appeals conclusion that Patterson's proposed additional grounds for appeal lacked merit.  *Powell v. Berghuis*, 560 F. App'x 442, 454 (6th Cir. 2013), unless it represented a misapplication of clearly established federal law.  The Ohio Court of Appeals concluded that Patterson was unable to show that appellate counsel's performance was deficient.  That finding alone was enough to end the court of appeals' analysis under *Strickland v. Washington*, 466 U.S. 668 (1984).  But the court of appeals also concluded Patterson could not show that he had suffered any prejudice.  This court cannot disturb those conclusions unless deferring would result in a fundamental miscarriage of justice or create the probability that someone who was actually innocent of the charge was

---

[13] Patterson has never raised the contention – on direct appeal, on his motion for reconsideration, on his application to reopen, or in his habeas petition that his *trial* counsel was constitutionally ineffective for requesting a reckless homicide instruction as a lesser included offense.  Any such a claim has been defaulted, and his attempt to assert ineffective assistance of appellate counsel was not the substantive equivalent of that claim.

convicted. As noted above, Patterson has neither asserted his actual innocence nor presented any new, reliable evidence thereof. And this is certainly not a case which appears to have resulted in a fundamental miscarriage of justice. Patterson was intimately involved in the sale of the drugs foreseeably used by the seventeen-year-old girl who died on her birthday, and he failed to call for help to save her life when the chance to do so presented itself.

To summarize, Patterson's third ground for relief fails on the merits. And, to the extent he intended it to raise a challenge to the trial court jury instruction on reckless homicide, the claim was procedurally defaulted. I recommend Ground Three be dismissed.

**D.     Ground Four**

The disposition of Ground Four tracks the disposition of the sufficiency of the evidence claim in Patterson's Ground Three. In Ground Four, Patterson raises a sufficiency of the evidence claim in regard to the Count Two and Count Three charges that he corrupted another with drugs. The "supporting facts" statement regarding Ground Four in Patterson's petition is identical to the claim in his third ground: "There was no evidence to show that Petitioner Patterson had committed the crimes. Tyler Stevens admitted in open court and with trial transcripts stating his testimony to this crime." ECF Doc. 1, Page ID# 10.

Patterson's Traverse challenges the proof offered in support of the two counts of corrupting another with drugs. He contends, "the evidence presented at trial can only prove, at best, that Patterson was guilty of knowingly *furnishing* heroin to Stevens." ECF Doc 9, Page ID# 1178 (emphasis original). Patterson argues that the Ohio criminal code does not define the term 'furnish'; and he takes issue with the court of appeals' approval of the jury instruction when it indicated: "'Furnished' as defined for the jury, meant 'provided, supplied or *gave access to.*' It does not matter if the heroin was sold or delivered directly to Stevens, provided that the sale *gave*

*[the victim] access to it.*"  Patterson argues a more appropriate definition of 'furnish' would have been the one he cites from Black's Law Dictionary, 6th Ed., requiring "transfer of possession." *Id.* at Page ID# 1178-79.  Patterson also contends if he "did not transfer possession of the heroin to the victim, then it cannot be said he knowingly caused her serious physical harm.  And even if this court disagrees with Patterson's assertion that he did not "furnish" the heroin to the victim, there was still insufficient evidence to show that he knowingly caused the victim serious physical harm.  Pursuant to O.R.C. 2901.22(B) there [] was no evidence provided to prove that Patterson was aware that his conduct would probably cause the victim's death." *Id.*  Patterson asserts the same issue concerning the definition of "furnish or administer" undermined his conviction on the Count Three corrupting another with drugs charge under Ohio Rev. Code §2925.02(A)(4).

Warden Bracy's response regarding Ground Four simply asserts that the ground must be disposed of for lack of merit because Patterson has not shown that the Ohio Court of Appeals' finding that sufficient evidence to support the corrupting another with drugs counts must be deferred to. And the warden contends that decision did not involve an unreasonable application of clearly established federal law.

Initially, I note that there is a discrepancy between Patterson's petition and his Traverse. Ground Four of the petition simply raises a sufficiency of the evidence challenge in regard to his convictions on Count Two and Count Three of the indictment.  Patterson's Traverse also raises a sufficiency challenge.  In addition, however, Patterson raises – for the first time in the entire history of his state and federal court litigation – an argument that the trial court and Ohio Court of Appeals both erred in how they defined the term "furnished" as found in the corrupting another with drugs statute, Ohio Rev. Code § 2925.02(A)(3) and (4)(a).  ECF Doc. 9, Page ID# 1178-1179.

40

Because Patterson's arguments concerning the interpretation of the statutory language cited above were raised for the first time in his Traverse, this court should decline to consider them.  The Sixth Circuit has held that a district court does not err in declining to address claims first raised in a traverse rather than in the habeas petition. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). *See also Smith v. Bagley*, No. 1:00cv1961, 2014 U.S. Dist. LEXIS 46058, at fn. 15 (N.D. Ohio April 13, 2014); *Palmer v. Bagley*, No. 1:00-cv-882, 2005 U.S. Dist. LEXIS 41926 (S.D. Ohio, Dec.16, 2005) report and recommendation adopted by 2006 U.S. Dist. LEXIS 32146 (S.D. Ohio April 17, 2006)("A traverse, however, is not the proper vehicle in which to raise new claims or sub-claims in habeas corpus."); *Burns v. Birkett*, No. 2:06-CV-20852-DT, 2007 U.S. Dist. LEXIS 58501 at *5, fn. 2 (E.D. Mich. Aug.9, 2007) ("Because these claims are being presented for the first time in petitioner's traverse or reply brief, rather than in his habeas petition, this Court declines to address these claims, because they are not properly before this Court.").  Patterson's Traverse, ECF Doc. 9, is not the proper vehicle in which to raise a new habeas claim relating to the proper definition of Ohio law.  Moreover, as discussed above, this court is required to defer to a state court's interpretation of its own state's law.[14]  Finally, Patterson never raised this issue (or ever characterized the issue as a federal claim) in his direct appeal.  For all of these reasons, I recommend the court decline to address Patterson's argument concerning the interpretation of the word "furnished" in Ohio Rev. Code § 2925.02(A)(3).

Patterson's argument that there was insufficient evidence to support jury verdicts on the Count Two and Count Three corrupting another with drugs charges must be rejected.  Plainly, as articulated by the state court of appeals, the evidence adduced at trial was sufficient to permit a rational fact finder to conclude that Patterson's provision to heroin to Tyler Stevens was

---

[14] Footnote 11, page 36, *supra.*

probably going to be used by the victim, whom Patterson knew was the real purchaser.  And the jury had a rational basis to infer that someone using heroin could foreseeably overdose and suffer serious physical harm, even if she hadn't died.  Given the evidence that Patterson had ben dealing drugs to the teenaged Tyler Stevens for three years and given the jury's opportunity to inspect photographs of the seventeen-year-old victim, the jury had a rational basis for concluding Patterson knew the victim was a minor or was at least reckless about that fact.  Because there was sufficient evidence to support the jury's verdicts, I also find nothing at all to suggest that the Ohio Court of Appeals misapplied clearly established federal law in overruling Patterson's sufficiency of the evidence challenge to those verdicts.

Ground Four should be dismissed for lack of merit.

### E.    Ground Five

Because Patterson's Traverse asserts that Ground Five "effectively raise[s] the same claim [as Ground Three] – that the trial court erred in providing the jury with a lesser included offense instruction for Reckless Homicide where Patterson was charged with Involuntary Manslaughter; and that there was insufficient evidence to convict him of either,"[15] I recommend that it be dismissed on the same ground discussed in Section V(C) above.  The claim has been procedurally defaulted, and Patterson cannot demonstrate cause or prejudice on this issue.  Nor has he produced any new, reliable evidence to show he is actually innocent.

### F.    Grounds Six and Seven

 Patterson's sixth and seventh grounds for relief duplicate the arguments he attempted to raise in his Rule 26(B) application to reopen his direct appeal.  Ground Six contends Patterson's due process rights were violated when he was convicted of drug trafficking under Count Six of

---

[15] ECF Doc. 9, Page ID# 1175; *see* p. 29 *supra*.

the indictment.  In essence, Patterson points out that the jury found him guilty of trafficking

heroin in an amount that "equaled or exceeded five grams but less than ten grams" while Count

Six charged him with trafficking heroin an amount that "equaled or exceeded ten grams but less

than fifty grams."  He points out that he or his companions were found with various amounts of

heroin but none of them "equaled or exceeded five grams but less than ten grams."  Patterson

argues there was no evidence to support his conviction for that lesser amount.

In Ground Seven Patterson contends his due process rights were violated when he was

refused his request to replace his retained trial counsel at the start of the trial.  The state's brief

on this issue in the Rule 26(B) proceedings pointed out that Patterson sought to replace his

attorney on the morning of trial when the jury had already been seated.  ECF Doc. 6-1, Ex. 19,

Page ID# 358.

Patterson admits he did not raise these claimed errors on direct appeal but attempted to

assert them in his Rule 26(B) application to reopen the direct appeal.  For the reasons discussed

above, these claims are procedurally defaulted.  Ohio's rule of *res judicata* would bar the claims

from being raised in Ohio now; and Patterson's failure to give the Ohio courts an opportunity to

correct the alleged constitutional error means he may not obtain a writ of habeas corpus based on

that claim.  As discussed above, Patterson did not demonstrate either cause or prejudice in regard

to his failure to raise the Rule 26(B) application issues in the trial court or on direct appeal.

AEDPA requires this court to defer to the Ohio Court of Appeals conclusion that

Patterson's proposed additional grounds for appeal lacked merit.  *Powell v. Berghuis*, 560 F.

App'x 442, 454 (6th Cir. 2013), unless it represented a misapplication of clearly established

federal law.  The Ohio Court of Appeals concluded that Patterson was unable to show that

appellate counsel's performance was deficient.  That finding alone was enough to end the court

43

of appeals' analysis under *Strickland v. Washington*, 466 U.S. 668 (1984). But the court of appeals also concluded Patterson could not show that he had suffered any prejudice because the assertion of the claims would not likely have produced a different result on direct appeal. This court must defer to those conclusions unless deferring would result in a fundamental miscarriage of justice or create the probability that someone who was actually innocent of the charge was convicted. To repeat, Patterson has neither asserted his actual innocence nor presented any new, reliable evidence thereof. And this is certainly not a case which appears to have resulted in a fundamental miscarriage of justice.

I recommend Ground Six and Ground Seven be dismissed on the ground that they were procedurally defaulted.

## VI.    Recommendation Regarding Certificate of Appealability

### A.    Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve

44

encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Where, as here, a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.

45

If the Court accepts the foregoing recommendations concerning the procedural default in regard to Grounds One, Two, Three (as argued in Patterson's Traverse), Five, Six and Seven, Patterson would not be able to show that the court's ruling on the procedural question is reasonably debatable.  As noted above, Patterson has acknowledged that certain claims were not raised on direct appeal (Grounds Five, Six and Seven); and he has offered no substantive response to Warden Bracy's contention that Grounds One and Two were not fairly presented in state court or exhausted there, requiring the conclusion that those grounds were procedurally defaulted.  Nor has Patterson submitted new, reliable evidence demonstrating that his is the rare petition which should be granted habeas review, despite the procedural defaults, because he is actually innocent.  Thus, the resolution of the procedural issues is not reasonably debatable, and the Court should conclude that Patterson is not entitled to a certificate of appealability with respect to Grounds One, Two, Five, Six and Seven.  Similarly, the conclusion that Patterson's Ground Three and Ground Four fail on the merits cannot reasonably be debated.

## VI.    Recommendations

Because the all of Patterson's seven grounds for relief either lack merit, raise noncognizable claims or were procedurally defaulted, I recommend that the court deny Patterson's petition for a writ of habeas corpus under 28 U.S.C. § 2254 in its entirety.  I further recommend that Patterson not be granted a certificate of appealability.

Dated: January 16, 2019

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file

objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).